Argued January 8, affirmed as modified May 16, 1969

JOHN ET AL, *Respondents, v.* GARDINER ET AL,
*Appellants.*

454 P2d 648

*Norman L. Lindstedt,* Portland, argued the cause for appellant Frank Malina. With him on the brief were Buss, Leichner, Lindstedt, Rose & Barker, Portland.

*R. Alan Wight,* Portland, argued the cause for respondents. With him on the brief were King, Miller, Anderson, Nash & Yerke, Portland.

Before PERRY, Chief Justice, and McALLISTER, O'CONNELL, DENECKE and LANGTRY, Justices.

O'CONNELL, J.

This is a suit brought by two accommodation endorsers of a promissory note against other endorsers on the note to compel the latter to contribute a proportionate share of the amount plaintiffs paid to the holder of the note. Defendant Gardiner filed a confession of judgment. Gardiner does not appeal. Defendant Malina (hereafter referred to as defendant) filed an answer consisting of a general denial, affirmative defenses, and a counterclaim. Plaintiffs' reply denied the affirmative matter in the answer and set up the statute of limitations as a bar to the counterclaim. Defendant appeals from a decree in favor of plaintiffs for $19,250 plus interest computed from February, 1961.

Plaintiffs and defendant along with others were stockholders in Golfland, Inc., which is now bankrupt. Plaintiffs were among the original investors when the

corporation was formed in 1958. Defendant invested in the corporation in 1959. Each of the plaintiffs owned approximately 34% of the stock; defendant owned approximately 5.6%.

On February 20, 1961 Golfland, Inc. executed a promissory note in the amount of $77,000 to the U. S. National Bank. The signatures of Lester M. John, John R. Hand, Frank Malina and James C. Gardiner, in that order, appear as endorsers on the back of the note.

On May 23, 1961, a new note in the amount of $150,000 was executed by Golfland, Inc. to the U. S. National Bank; it was endorsed only by plaintiffs. The new note included the liability on the $77,000 and constituted a renewal of the first note. The balance was used to pay various corporate obligations. The bank retained the $77,000 note; it was stamped "Renewed." Upon the subsequent default of the maker plaintiffs paid the $150,000 note. They then brought this suit to obtain contribution from defendants.

Defendant first contends that the endorsements on the back of the $77,000 note were successive and that each endorser agreed only to be liable severally in the order in which his name appeared upon the note. Since the notes in question were executed in 1961, prior to the effective date of the Uniform Commercial Code in Oregon, the applicable law is to be found in the Negotiable Instruments Law (ORS Ch 71) as it read in 1961. ORS 71.068 provided as follows:

> "As respects one another, indorsers are liable prima facie in the order in which they indorse, but evidence is admissible to show that as between or among themselves they have agreed otherwise. Joint payees or joint indorsers who indorse are deemed to indorse jointly and severally."

■ The evidence leaves no doubt that plaintiffs and the other endorsers including defendant endorsed the note with the understanding that they would be jointly obligated. Therefore, as a joint endorser defendant is "jointly and severally" liable under ORS 71.068.

Defendant's second argument is that he was discharged from liability on the note for $77,000 "because the corporation itself discharged the note when it gave its note for $150,000 over the objection of defendant Malina."

■ The rule is stated in Britton on Bills and Notes, § 263, p. 1032 (1943), as follows:

> "* * * Where the old note is retained and the new note is issued and accepted in renewal of the old note, according to the majority of cases, the presumption is that the old note is not discharged and parties thereto continue liable to the holder. * * * * * The renewal of a note by the principal debtor does not, of itself, discharge a guarantor of payment of the old note."①

The parties may agree, of course, that the new note will discharge the old. The burden of proving that the renewal note was intended as a discharge is on defendant. Defendant did not meet this burden. Defendant attempts to make something of the fact that he refused to endorse the new note and that he surrendered his stock in Golfland, Inc. to the bank when the new note was executed. He testified that all this was done with the understanding that he would be discharged on the old note. There was evidence to the contrary which, in our opinion, has greater plausibility. Everything that was done indicated an intent on the part of the bank that the old note, which was retained and marked "Re-

---

① See also, 5 Uniform Laws Annotated § 119.

newed" would remain alive. The bank had nothing to gain by treating the $77,000 as having been paid by the execution of the $150,000 note. On the contrary, the bank would have lost the security of defendant's liability on the endorsement—a loss which we cannot assume the bank would intend under these circumstances.[9]

■ Defendant next argues that even if he is liable to his co-endorsers for a proportionate share of the $77,000 debt, he is entitled to a set off of $25,000, the amount he paid for his stock, because plaintiffs misrepresented the financial condition of the corporation at the time he purchased his stock. This contention is not borne out by the evidence. Defendant was induced to invest in Golfland, Inc. by Father Lyons, a Jesuit priest, who was convinced that the property (which was owned by the Jesuit order) could be profitably developed. Father Lyons had previously induced each of the plaintiffs to invest $10,000 in the enterprise. (When the unfortunate enterprise ended in bankruptcy each of the plaintiffs had invested a total of $250,000.) Plaintiffs did not make any express representations to defendant with respect to the condition of the company. Defendant purchased no stock from plaintiffs and plaintiffs made no profit from defendant's purchase. We find nothing in the record even remotely indicating any misconduct upon the part of plaintiffs in making misrepresentations or failing to disclose to defendant the condition of Golfland, Inc.

Plaintiffs are entitled to contribution from defendant for one-fourth of the amount plaintiffs paid to discharge the obligation on the $77,000 note, plus statutory interest computed from the date plaintiffs dis-

---

[9] Cf., First National Bank of Boston v. McGowan, 296 Mass 101, 5 NE2d 5 (1936).

charged the note. The amount plaintiffs paid to discharge the obligation would include the principal amount of the note plus any accumulated interest the plaintiffs paid which was attributable to the $77,000 note. It is not clear from the record whether the corporation had paid any interest on the $77,000 note at the time plaintiffs paid it off on March 19, 1964. Plaintiffs would not, of course, be entitled to contribution for any interest the corporation paid on the $77,000 note.

The decree is affirmed subject to modification if necessary to allow defendant credit for one-fourth of the interest, if any, paid by Golfland, Inc. on the $77,000 note.